**FILED**

**DECEMBER 10, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6939**

**JUDGE DER-YEGHIAYAN**
**MAGISTRATE JUDGE BROWN**

# EXHIBIT H

## Bullock, Connie J.

**From:** workster30@netscape.net
**Sent:** Tuesday, April 12, 2005 5:18 PM
**To:** Connie.Bullock@NHGL.med.navy.mil
**Subject:** RE: Info for US Attorney

Hello Connie,

    I was assigned to work at the gym by Dr. Sommons and social worker Ann Clinton Cirocco both of whom were part of my treatment team. As far as my supervisor, that was Chief Frausto who ran the Physical Readiness Program for Naval Hospital Great Lakes. When I wasn't doing outpatient treatment I would work at the gym for 3 hours at a time usually a couple times a week. My responsibilities were to do lead various exercises for overweight sailors. This would involve stretching, running, calisthenics, and sometimes playing basketball. Usually once a month we would test these individuals to see if they met the Physical Readiness requirements for their age and body weight. If I can be of any further assistance in this matter, please feel free to call.

Thank You,
Kirk Hill

"Bullock, Connie J." <Connie.Bullock@NHGL.med.navy.mil> wrote:

>Mr. Hill:  Your 6 March 2005 request to be certified as within the
>scope of your employment on the date of the incident involving Mr.
>Foster has been forwarded to the US Attorney's office for
>consideration.  That office has requested additional info which, after
>reviewing your file, does not appear in the summaries or reports.
>Thus, I am asking you to supply this
>information:  who assigned you to work at the gym?  Who was your
>supervisor while you were there?  What were your hours?  What were your
>general and specific duties in the gym?
>
>Your prompt response is appreciated.
>R/CDR Bullock
>SJA NHGL
>
>

---

Switch to Netscape Internet Service.
As low as $9.95 a month -- Sign up today at http://isp.netscape.com/register

Netscape. Just the Net You Need.

New! Netscape Toolbar for Internet Explorer
Search from anywhere on the Web and block those annoying pop-ups.
Download now at http://channels.netscape.com/ns/search/install.jsp





Enclosure ( 1 )

shill                                         8152345''9                    P.9



# March 2002



*Fitness Enhancement Sessions*

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | **1** 0600-GRAVINA 1300-WEBER 1600-RAMSEY | **2** |
| **3** | **4** 0600-MELVIN 1300-UGLUM 1600-LETADA | **5** 0600-MCFARLAND 1300-HILL 1600-FRAUSTO | **6** 0600-MELVIN 1300-KAEBISCH 1600-RAMSEY | **7** 0600-COLLINS 1300-WINTHEIN 1600-FRAUSTO | **8** 0600-GRAVINA 1300-BORSOS 1600-GONZALEZ | **9** |
| **10** | **11** 0600-MELVIN 1300-PONCE DE LEON 1600-GONZALEZ | **12** 0600-MCFARLAND 1300-HILL 1600-RAMSEY | **13** 0600-MELVIN 1300-WINTHEIN 1600-LETADA | **14** 0600-WILLIS 1300-AGOSTO 1600-RAMSEY | **15** 0600-GRAVINA 1300-NICOLA 1600-FRAUSTO | **16** |
| **17** | **18** 0600-MELVIN 1300-BORSOS 1600-GONZALEZ | **19** 0600-LAVASSER 1300-KAEBISCH 1600-FRAUSTO | **20** 0600-MELVIN 1300-HILL 1600-GONZALEZ | **21** 0600-COLLINS 1300-LITTLETON 1600-RAMSEY | **22** 0600-GRAVINA 1300-WEBER 1600-LETADA | **23** |
| **24** | **25** 0600-MELVIN 1300-WEBER 1600-LETADA | **26** 0600-WILLIS 1300-NICOLA 1600-FRAUSTO | **27** 0600-MELVIN 1300-HILL 1600-RAMSEY | **28** 0600-FRAUSTO 1300-PONCE DE LEON 1600-LETADA | **29** 0600-GRAVINA 1300-BORSOS 1600-FRAUSTO | **30** |
| **31** | | | | | | |

```
        February
   S  M  T  W  T  F  S
                  1  2
   3  4  5  6  7  8  9
  10 11 12 13 14 15 16
  17 18 19 20 21 22 23
  24 25 26 27 28
```

```
          April
   S  M  T  W  T  F  S
         1  2  3  4  5  6
   7  8  9 10 11 12 13
  14 15 16 17 18 19 20
  21 22 23 24 25 26 27
  28 29 30
```

Printed by Calendar Creator for Windows on 2/25/02



UNITED STATES
EXHIBIT
3

shill                                    8152345``9                    p.9



# March 2002

## *Fitness Enhancement Sessions*



| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | **1** 0600-GRAVINA 1300-WEBER 1600-RAMSEY | **2** |
| **3** | **4** 0600-MELVIN 1300-UGLUM 1600-LETADA | **5** 0600-MCFARLAND 1300-HILL 1600-FRAUSTO | **6** 0600-MELVIN 1300-KAEBISCH 1600-RAMSEY | **7** 0600-COLLINS 1300-WINTHEIN 1600-FRAUSTO | **8** 0600-GRAVINA 1300-BORSOS 1600-GONZALEZ | **9** |
| **10** | **11** 0600-MELVIN 1300-PONCE DE LEON 1600-GONZALEZ | **12** 0600-MCFARLAND 1300-HILL 1600-RAMSEY | **13** 0600-MELVIN 1300-WINTHEIN 1600-LETADA | **14** 0600-WILLIS 1300-AGOSTO 1600-RAMSEY | **15** 0600-GRAVINA 1300-NICOLA 1600-FRAUSTO | **16** |
| **17** | **18** 0600-MELVIN 1300-BORSOS 1600-GONZALEZ | **19** 0600-LAVASSER 1300-KAEBISCH 1600-FRAUSTO | **20** 0600-MELVIN 1300-HILL 1600-GONZALEZ | **21** 0600-COLLINS 1300-LITTLETON 1600-RAMSEY | **22** 0600-GRAVINA 1300-WEBER 1600-LETADA | **23** |
| **24** | **25** 0600-MELVIN 1300-WEBER 1600-LETADA | **26** 0600-WILLIS 1300-NICOLA 1600-FRAUSTO | **27** 0600-MELVIN 1300-HILL 1600-RAMSEY | **28** 0600-FRAUSTO 1300-PONCE DE LEON 1600-LETADA | **29** 0600-GRAVINA 1300-BORSOS 1600-FRAUSTO | **30** |
| **31** | | | | | | |

|  February  |
|---|
| S M T W T F S |
| 1 2 |
| 3 4 5 6 7 8 9 |
| 10 11 12 13 14 15 16 |
| 17 18 19 20 21 22 23 |
| 24 25 26 27 28 |

|  April  |
|---|
| S M T W T F S |
| 1 2 3 4 5 6 |
| 7 8 9 10 11 12 13 |
| 14 15 16 17 18 19 20 |
| 21 22 23 24 25 26 27 |
| 28 29 30 |

Printed by Calendar Creator for Windows on 2/25/02



UNITED STATES
EXHIBIT
3

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

REPORT OF INVESTIGATION (INTERIM)                                    03APR02

ASSAULT (II)                          CONTROL:   05MAR02-GCGL-0081-7GNA

S/HILL, KIRK LEE/HMC USN
   M/W/NEE7/U/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/24APR65/OREGON, IL
V/FOSTER, JAMES HALL/CIV
   M/B/USXX/U/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/08APR52/CLEVELAND, OH

COMMAND/NAVAL HOSPITAL GREAT LAKES, IL/00211

MADE AT/GCGL/GREAT LAKES, IL/JAMES E. MCCARTNEY, SPECIAL AGENT

CASE SUMMARY

1.  This investigation was initiated upon receipt of information
from the Great Lakes (IL) Police Department (GLPD) that S/HILL
allegedly struck V/FOSTER on the right side of his head with a
metal bar in the Naval Hospital Corp School Gymnasium, Bldg 80-H,
Great Lakes, IL at approximately 1230 on 05FEB02 aboard the Naval
Training Center (NTC) Great Lakes, IL.

2.  V/FOSTER was taken to Naval Hospital Great Lakes for treatment
where his injuries were photographed.  HM2 Billy R. Carver, USN,
Naval Hospital Great Lakes, IL, Medical Photography, photographed
V/FOSTER'S injury to his head.  V/FOSTER was subsequently
transported to the Intensive Care Unit at Evanston Hospital,
Evanston, IL for observation.

3.  Crime Scene examination revealed the assault took place in the
north west side of the men's locker room located in Bldg 80-H.  The
crime scene had already been cleaned when participating agent (PA)
Harrison arrived on the scene.  On 05MAR02, PA Harrison seized
bloody towels, bloody thermal underwear and one silver pull down
stainless steel bar.  PA Harrison seized the aforementioned items
from Officer William McCorkle, GLPD and entered them into the NCIS
evidence custody system, log #023-02 pertains.  PA Harrison
completed photographic coverage of the crime scene.  A crime scene
examination Investigative Action will be completed and forwarded
under separate report of investigation when the crime scene
photographs are developed.

4.  On 05MAR02, S/HILL fled Bldg 80-H after the assault on
V/FOSTER.  A man hunt for S/HILL was initiated by the NCIS and
officers from the GLPD, however, S/HILL was not found aboard the
Naval Training Center (NTC) Great Lakes, IL.  During the man hunt,
participating agent Henry received copies of S/HILL'S medical
treatment records and various documents relating to S/HILL'S Naval
Career and training records from LCDR Bret Moberg, JAGC USN, Staff
Judge Advocate, Naval Hospital Great Lakes, IL.  The documentation
received from LCDR Moberg was utilized to assist in the
apprehension of S/HILL only and will be held at Naval Criminal
Investigative Service Great Lakes, IL in the case file.


FOR OFFICIAL USE ONLY
PAGE   1

UNITED STATES
EXHIBIT
4

WARNING

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

P-4/5  X-4/5

05MAR02-CCCL-0061-7887   Case 1:05-cv-06175     Document 28     Filed 05/03/2006     Page 2 of 37   03APR02

S/HILL, KIRK LEE/HMC USN

## U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

4.   On 05MAR02, at approximately 2030, S/HILL was placed under military apprehension by NCIS with assistance from the Byron (IL) Police Department and the Ogle County (IL) Sheriff's Office at his residence, 6418 North Deerpath Place, Oregon, IL 61061.  S/HILL was interrogated after a proper Article 31.b rights advisement, and denied culpability in the assault of V/FOSTER.  S/HILL was released to command, Building 200-H at approximately 2230 and was subsequently transported to the Pre-Trial Confinement Facility (PCF) aboard NTC Great Lakes, IL without incident.

5.   On 07MAR02, PA Henry interviewed SN Larry Dwain GRIFFIS, USN, Basic Emergency Medical Technician (EMT), Naval Hospital Great Lakes, IL.  SN GRIFFIS stated he responded to the scene and assisted in the initial assessment of V/FOSTER,  SN GRIFFIS advised V/FOSTER was not coherent enough to relate details of the alleged assault.  On 07MAR02, PA Weimer interviewed HM3 Raymond Glenn Smith, USN, Medical Hold Coordinator, Naval Hospital Great Lakes, IL.  HM3 Smith stated he and S/HILL had a minor non verbal altercation over the water fountain just prior to the assault on V/FOSTER.  HM3 Smith said he saw S/HILL in possession of a stainless steel bar just prior to the assault on V/FOSTER.  HM3 Smith said he saw the stainless steel bar back on the Universal Machine after S/HILL exited Bldg 80-H.

6.   On 07MAR02, PA Weimer interviewed HN Brett Daryl Cranston, USN, Team Leader, Gold Team Ambulance Crew, Naval Hospital Great Lakes, IL.  HN Cranston stated he responded to the scene and transported V/FOSTER to the Naval Hospital and assisted with V/FOSTER'S treatment at the hospital.  HN Cranston stated V/FOSTER was incoherent and uncooperative during the treatment.  HN Cranston stated that a copy of the Emergency Medical Services Report regarding V/FOSTER'S transport (Incident # 1231) is attached to his statement.

7.   On 07MAR02, Theodore (NMN) Runnels, CIV, Physical Science Technician, Navy Drug Screening Laboratory, Naval Hospital Great Lakes, IL was interviewed and stated S/HILL walked in the locker room and swung a stainless steel bar in the direction of V/FOSTER, then exited the locker room.  Mr. Runnels said he heard the bar strike V/FOSTER and he heard V/FOSTER fall to the ground.  Mr. Runnels said he then observed V/FOSTER lying on the floor of the locker room with a puddle of blood pooling and growing behind V/FOSTER'S head.  Runnels further stated he went upstairs to call for help where he saw S/HILL.  Mr. Runnels said he identified S/HILL as V/FOSTER'S assailant to an HM1 named Mark, subsequently identified as HM1 Mark Dillender.  Reporting agent showed Mr. Runnels the stainless steel bar seized in connection with this investigation and Mr. Runnels identified it as looking identical to the bar S/HILL swung at V/FOSTER.

8.   On 08MAR02, reporting agent interviewed HM1 Elijah (NMN) Rahman, USN, Fleet Medicine Office, Naval Hospital Great Lakes, IL. HM1 Rahman stated that just prior to the assault on V/FOSTER he saw

FOR OFFICIAL USE ONLY
PAGE  2

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

S/HILL, KIRK LEE/HMC USN

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

S/HILL come into the weight room, retrieve a stainless steel bar from the universal machine and walk out of the weight room with the bar. HM1 Rahman said S/HILL returned a minute later and replaced the stainless steel bar. Reporting agent showed HM1 Rahman the stainless steel bar seized in connection with this investigation and HM1 Rahman identified it as looking the same as the bar S/HILL retrieved from the weight room.

9. On 11MAR02, PA Weimer interviewed HM3 Joseph Aaron Hutchison, USN, Basic EMT, Naval Hospital Great Lakes, IL. HM3 Hutchison stated that he assisted in treating and transporting V/FOSTER to Naval Hospital Great Lakes, IL. HM3 Hutchison said V/FOSTER did not know what happened to him and did not identify his assailant. On 11MAR02, PA Weimer interviewed HN Morgan David Shepherd, USN, Basic EMT, Naval Hospital Great Lakes, IL. HN Shepherd said V/FOSTER never said what had happened to him or who hit him. HN Shepherd stated he provided PA Weimer with a copy of the emergency medical services report (run sheet) from the ambulance run the day of the assault.

10. On 15MAR02, reporting agent interviewed SH1 Luis Cope Villanueva, USN, who stated he saw S/HILL carrying a stainless steel bar as if he was hiding it as he entered the locker room. SH1 Villanueva said he saw S/HILL swing the bar in the direction of V/FOSTER. SH1 Villanueva said he heard V/FOSTER cry out in a very loud moan and also heard a thug as V/FOSTER fell to the floor. SH1 Villanueva said S/HILL then turn and gave him a very threatening look, but S/HILL said nothing. SH1 Villanueva said S/HILL then left the locker room.

11. On 15MAR02, reporting agent interviewed HMCM Alfredo Bosas Jocosing, USN, Naval Hospital Great Lakes, IL. HMC Jocosing said he was in the weight room at Bldg 80-H on 05MAR02 at approximately 1200 with HM1 Rahman. HMCM Jocosing said he saw a white male take the silver stainless steel universal bar from the weight room and replace it approximately five minutes later. HMCM Jocosing said he does not know the individual by name, however, he can identify the person who retrieved and replaced the stainless steel bar in the weight room on 05MAR02 if he sees him again.

12. On 18MAR02, reporting agent interviewed V/FOSTER. V/FOSTER stated that on 05MAR02, at approximately 1230, he was standing on the west side of the men's locker room in Bldg 80-H aboard the Naval Training Center Great Lakes, when he was struck in the right rear side of the head from behind by a person unknown to him. V/FOSTER said he does not know S/HILL and he had no altercation with S/HILL or anyone else at the gymnasium that day. V/FOSTER stated he has a blood clot, a fractured skull, impaired vision, impaired speech and impaired hearing in his right ear due to the injuries he sustained from the assault. On 19MAR02, reporting agent obtained a written authority to release medical information and records from V/FOSTER. On 19MAR02, reporting agent provided this release from V/FOSTER to LCDR Bret Moberg, JAGC USN, Staff

FOR OFFICIAL USE ONLY
PAGE 3

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

05MAR02  GCGL 105L-7RNN  Case 1:05-cv-06175     Document 28     Filed 05/03/2006     Page 4 of 37 3APR02
S/HILL, KIRK LEE/HMC USN

## U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

Judge Advocate, Naval Hospital Great Lakes, IL.  On 21MAR02, LCDR Moberg provided reporting agent with the treatment and medical records for V/FOSTER from 05MAR02 from Naval Hospital Great Lakes, IL.

13.  On 19MAR02, reporting agent interviewed HM1 Mark I. Dillender, USN, Education and Training Department, Naval Hospital Great Lakes, IL.  HM1 Dillender stated that on 05MAR02, at approximately 1230, he was in Bldg 80-H when Ted Runnels waived him over to the front desk.  HM1 Dillender stated Runnels pointed to S/HILL and said that S/HILL was the guy who hit V/FOSTER in the head with a bar.  HM1 Dillender said he could identify S/HILL if he saw him again. Details are provided, exhibits (1) through (18) pertain. Investigation is pending additional interviews, completion of the crime scene investigative action, receipt of additional medical records for V/FOSTER from Evanston Hospital and adjudication of S/HILL.

14.  On 03APR02, LT Mark Rosen, JAGC USN, Trial Counsel, Trial Service Office (TSO) East Detachment, Great Lakes, IL advised S/HILL is scheduled for transfer to MCAS Miramar, CA and will be prosecuted by TSO West, Naval Station San Diego, CA.

PARTICIPANTS
Michael Keleher, Special Agent, NCISRA Great Lakes, IL
Doug Johnson, Special Agent, NCISRA Great Lakes, IL
Mark Harrison, Special Agent, NCISRA Great Lakes, IL
Jocelyn Dillard, Special Agent, NCISRA Great Lakes, IL
John Weimer, Special Agent, NCISRA Great Lakes, IL
Michael Henry, Special Agent, NCISRA Great Lakes, IL

EXHIBITS
(1)  GLPD Initial Incident Complaint Report/05MAR02...(copy all less GCPF)
(2)  GLPD Supplemental Incident Complaint Report/05MAR02...(copy all, less GCPF)
(3)  IA: Photographs of V/FOSTER'S injuries/05MAR02...(copy all, less GCPF)
(4)  IA: Apprehension of S/HILL/05MAR02...(copy all, less GCPF)
(5)  IA: Results of interrogation of S/HILL/05MAR02...(copy all less GCPF)
(6)  GLPD Supplemental Incident Complaint Report/05MAR02...(copy all, less GCPF)
(7)  IA: Results of interview with SN Larry Dwain Griffis/07MAR02 ...(copy all, less GCPF)
(8)  Statement of HM3 Raymond Glenn Smith/07MAR02...(copy all, less GCPF)
(9)  Statement of HN Brett Daryl Cranston, USN/07MAR02...(copy all less GCPF)
(10) Statement of Theodore (NMN) Runnels/07MAR02...(copy all, less GCPF)
(11) Statement of HM1 Elijah (NMN) Rahman/08MAR02...(copy all, less GCPF)

FOR OFFICIAL USE ONLY
PAGE   4

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

05MAR02-GCGL-0081-7GNA
S/HILL, KIRK LEE/HMC USN

## U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

(12)  Statement of HM3 Joseph Aaron Hutchison, USN/11MAR02...(copy
      all, less GCPF)
(13)  Statement of HN Morgan David Shepherd, USN/11MAR02...(copy
      all, less GCPF)
(14)  Statement of Luis Cope Villanueva Jr., USN/15MAR02...(copy
      all, less GCPF)
(15)  Statement of HMCM Alfredo Bosas Jocosing, USN/15MAR02...(copy
      all, less GCPF)
(16)  IA: Results of interview with V/FOSTER/18MAR02...(copy all,
      less GCPF)
(17)  IA:  Receipt of V/FOSTER'S treatment records from Naval
      Hospital Great Lakes, IL/19MAR02...(copy all less GCPF)
(18)  Statement of HM1 Mark I. Dillender/19MAR02...(copy all, less
      GCPF)

DISTRIBUTION
NCISHQ:  0023B (M)
NCISFO:  GCPF
INFO:  CO, NAVHOSP (H)/LEGAL NAVHOSP ATTN: LCDR MOBERG (H)/TSO EAST
       ATTN: LT MARK ROSEN (M)/TSO WEST, 3395 STURTEVANT STREET,
       SUITE 9, SAN DIEGO, CA  92136, ATTN: LT SHANNON COPPLIN (M)

FOR OFFICIAL USE ONLY
PAGE  5 LAST  NAE

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

| 1. CCN |
| 2. PLACE STATEMENT GIVEN: _____ |
| 3. DATE STATEMENT GIVEN: _05 Aug_   4. TIME: _1330_ |

1. (NAME) _Runnels_ (LAST)   _Ted_ (FIRST)   — (MIDDLE)   (RATE) _GS5_   (BRANCH) _____

(SSN) _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_   (DUTY STATION & UIC) _Navy Drug Screening Lab_   (WORK PHONE) _847-688-2045 X27_

(CIVILIAN ADDRESS) _5607 Lakehurst Rd Apt FC_   (HOME PHONE) _847 473-5354_

(DATE OF BIRTH) _13 Nov 1961_ (DAY/MONTH/YEAR)   (PLACE OF BIRTH) _Portsmouth_ (CITY)   _VA_ (STATE)

(SEX) _M_   (RACE) _Blk_   (WEIGHT) _200_   (HEIGHT) _5'9"_   (HAIR) _Blk_   (EYES) _Brown_   (IDENTIFYING MARKS,

TATTOOS, BIRTHMARKS, ETC.) _Wrist_ _____   MAKE THE FOLLOWING FREE AND VOLUNTARY

STATEMENT TO THE Great Lakes Police Department ____ OF MY OWN FREE WILL AND WITHOUT ANY THREATS OR PROMISES TO

ME. I FULLY UNDERSTAND THAT THIS STATEMENT IS GIVEN CONCERNING MY KNOWLEDGE OF: _____

_James Foster and I were talking in the lockerroom of Bldg 3H_
_Chief Hill walks in the door with a metal pipe and hits James_
_Foster. No warning, no words, No provocation._

_nothing follows_

(CONTINUE ON BACK IF YOU NEED MORE SPACE)

SIGNATURE _Ted Runnels_   DATE _3-5-02_   OFFICER'S NAME _Robert Clark PHC_   TITLE _____   DATE _05 Mar 02_

## CHARGE SHEET

### I. PERSONAL DATA

| 1. NAME OF ACCUSED (Last, First, Middle Initial) | 2. SSN | 3. GRADE OR RANK | 4. PAY GRADE |
|---|---|---|---|
| HILL, Kirk L. | 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 | HMC | E-7 |

| 5. UNIT OR ORGANIZATION | 6. CURRENT SERVICE | |
|---|---|---|
| Naval Hospital | a. INITIAL DATE | b. TERM |
| Great Lakes, Illinois | 25 Feb 2000 | 2 yrs |

| 7. PAY PER MONTH | | | 8. NATURE OF RESTRAINT OF ACCUSED | 9. DATE(S) IMPOSED |
|---|---|---|---|---|
| a. BASIC | b. SEA/FOREIGN DUTY | c. TOTAL | Pretrial Confinement | 5 March 2002 - present |
| 2892.60 | | 2892.60 | | |

### II. CHARGES AND SPECIFICATIONS

10. CHARGE:      VIOLATION OF THE UCMJ, ARTICLE 128

~~SPECIFICATION:~~

Specification 1: In that Chief Hospitalman (Surface Warfare) Kirk L. Hill, U.S. Navy, Naval Hospital, Great Lakes, Illinois, on active duty, did, at or near Navy Personnel Command, Millington, Tennessee, on or about 25 September 2001, commit an assault upon Master Chief Gunner's Mate James R. Culley, U.S. Navy, with a means and force likely to produce death or grievous bodily harm, to wit: pulling the head of said GMCM Culley back and strangling said GMCM Culley.

Specification 2: In that Chief Hospitalman (Surface Warfare) Kirk L. Hill, U.S. Navy, Naval Hospital, Great Lakes, Illinois, on active duty, did, at or near Naval Training Center, Great Lakes, Illinois, on or about 5 March 2002, commit an assault upon James H. Foster by striking him on the head with a metal bar and did thereby intentionally inflict grievous bodily harm upon him, to wit: a fractured skull.

### III. PREFERRAL

| 11a. NAME OF ACCUSER (Last, First, Middle Initial) | b. GRADE | c. ORGANIZATION OF ACCUSER |
|---|---|---|
| WOJDYLA, Daniel J. | MA1 | NAVHOSP GLAKES |

| d. SIGNATURE OF ACCUSER | e. DATE (YYYYMMDD) |
|---|---|
| *[signature]* | 20020305 |

AFFIDAVIT: Before me, the undersigned, authorized by law to administer oath in cases of this character, personally appeared the above named accuser this _5th_ day of ___March___, _2002_, and signed the foregoing charges and specifications under oath that he/she is a person subject to the Uniform Code of Military Justice and that he/she either has personal knowledge of or has investigated the matters set forth therein and that the same are true to the best of his/her knowledge and belief.

| B. A. MOBERG | NAVHOSP GLAKES |
|---|---|
| Typed Name of Officer | Organization of Officer |
| LCDR, JAGC, USN | Staff Judge Advocate |
| Grade | Official Capacity to Administer Oath (See R.C.M. 307(b), must be commissioned officer) |
| *[signature]* | |
| Signature | |

DD FORM 458, MAY 2000          PREVIOUS EDITION IS OBSOLETE.

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    S/HILL, KIRK LEE/HMC USN
CCN:     05MAR02-GCGL-0081-7GNA

INVESTIGATIVE ACTION:   RESULTS OF APPREHENSION OF S/HILL

On 05MAR02, S/HILL was apprehended for the alleged assault on V/FOSTER.  As background, S/HILL allegedly assaulted V/FOSTER in the Hospital Core School Gymnasium building 80H at approximately 1233 on 05MAR02 aboard Naval Training Center (NTC) Great Lakes.  S/HILL allegedly struck V/FOSTER on the right side of the head with a universal pull down bar from the exercise equipment in the gymnasium.  V/FOSTER was transported to the Great Lakes Naval Hospital building 200H and subsequently transported to Evanston Memorial Hospital, Evanston IL for observation.

On 05Mar02, at approximately 2025, S/HILL was placed under military apprehension by reporting and participating agents from NCIS, Byron, (IL) Police Department and the Ogle County Sheriff's Office, Oregon, IL at his residence, 6418 North Deerpath Place, Oregon, IL 61061, (815) 234-5739.

Reporting agent went to the front door of S/HILL's residence with Sgt James Getzelman and Deputy Neil Minnis of the Ogle County Sheriff's Office, while participating agents from the NCIS, Ogle County Sheriff's Office and the Byron Police Department surrounded the residence.  When S/HILL came to the door, Deputy Minnis asked him if he had a problem on the Navy Base earlier in the day.  S/HILL replied no.  Reporting agent then identified himself as a Special Agent with the Naval Criminal Investigative Service and told S/HILL he needed to come with NCIS back to Naval Training Center Great Lakes, IL.  S/HILL complied and agreed to let Deputy Minnis get his coat and boots from inside the residence.  S/HILL was subsequently handcuffed, placed in leg shackles and transported back to Naval Station Great Lakes, IL.

Reported By:    Special Agent James E. McCartney
Office:         NCISRA Great Lakes, IL

EXHIBIT (4 )

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO.  CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    S/HILL, KIRK LEE/HMC USN
CCN:      05MAR02-GCGL-0081-7GNA

INVESTIGATIVE ACTION:    RESULTS OF INTERROGATION WITH S/HILL

On 05MAR02, reporting and participating agent Henry conducted a custodial interview with S/HILL after a proper 5th ammendment/31.b rights advisement was given and S/HILL signed a written waiver indicating he waived his right to remain silent and his right to legal counsel, enclosure (1) to this investigative action. Pertains.

As background, S/HILL allegedly assaulted V/FOSTER in the Hospital Core School Gymnasium building 80H at approximately 1233 on 05MAR02 aboard Naval Training Center (NTC) Great Lakes. S/HILL allegedly struck V/FOSTER on the right side of the head with a universal pull down bar from the exercise equipment in the gymnasium. V/FOSTER was transported to the Great Lakes Naval Hospital building 200H and subsequently transported to Evanston Memorial Hospital, Evanston IL for observation.

On 05Mar02, at approximately 2025, S/HILL was placed under military apprehension by reporting and participating agents from NCIS and the Olgen County Sheriff's Office, Oregon, IL at his residence, 6418 North Deerpath Place, Oregon, IL 61061, (815) 234-5739. S/Hill was subsequently interrogated by reporting agent and participating agent Henry while in route back to NTC Great Lakes, IL.

S/HILL stated that he was present in the gymnasium when the alleged assault of V/FOSTER occurred. When asked if there were witnesses present in the gymnasium, S/HILL said that there were good people there. When asked if he struck V/FOSTER, S/HILL stated only "It doesn't matter". S/HILL stated that his problems began approximately nine months ago when a Master Chief in Millington, TN began to mess with him and his family. When asked what he meant by this, S/HILL said that whenever someone messes with him, they mess with his family also. S/HILL stated that he assaulted the Master Chief in Millington, TN, however, he was very vague as to the details of the alleged assault. S/HILL stated that he was experiencing rage when he assaulted the Master Chief in Millington, TN. S/HILL stated that he was sent to NTC Great Lakes, for Psychological evaluation for the incident in Millington, TN.

S/HILL was repeatedly asked if he struck V/FOSTER while in the gymnasium and continuously stated "It doesn't matter" When asked if he thought what happened to V/FOSTER was wrong, S/HILL said he felt nothing in relationship to the alleged assault. When asked if he felt like he was numb, S/HILL again stated "It doesn't matter"

When asked about his childhood, S/HILL said he was the captain of his football and track team and had a decent upbringing. S/HILL denied any abuse in his background and stated that he recalls his step father hitting him one time when he was young for playing with matches and almost burning down the house.

S/HILL stated that nothing mattered and that he would end up back at the SEAL teams and nothing would happen to him because "It doesn't matter".

EXHIBIT ( 5 )

WARNING
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO  CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

US                                                          0047

## U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    **S/HILL, KIRK LEE/HMC USN**
CCN:      **05MAR02-GCGL-0081-7GNA**

S/HILL said that when he looks at everyone in the hospital building he sees nothing but fear.  S/HILL stated that when he looks at the Commanding Officer of the Naval Hospital, he sees nothing but fear and the CO will not look him in the eye.

Enclosure
(1) Military suspect's acknowledgement and waiver of rights form for S/HILL/05FEB02

**Reported By:**    Special Agent James E. McCartney
**Office:**         NCISRA Great Lakes, IL

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO.  CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

## STATEMENT

Place   : Great lakes. Il
Date    : March 7, 2002

I, Theodore (NMN) Runnels. 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. DOB: 13NOV61 , make the following free and voluntary
statement to Special Agent James E. McCartney whom I know to be a Representative of the United
States Naval Criminal Investigative Service. I make this statement of my own free will and without
any threats made to me or promises extended. I fully understand that this statement is given
concerning my knowledge of the assault on James Foster on 05MAR02 at the mens locker room in the
hospital gymnasium 80-H aboard Naval Training Center Great Lakes. Il.

For identification purposes I am a black male standing 509 tall weighing 200 pounds with black hair
and brown eyes. I am employed as a Physical Science Technician at the Navy Drug Screening
Laboratory Building 38-H aboard the Naval Training Center Great lakes, IL. My work phone number
is (847) 688-2045 extension 27. I reside at 567 Lakehurst Road Waukegan, IL apartment GL. My
home phone number is (847) 473-9354.

On 05MAR02, between 1115 and 1245, I was working out at 80-H as I normally do Monday through
Thursday. I usually play basketball and James Foster usually plays with us, however, he did not play
the day he was assaulted because he recently hurt his knee. James Foster is a co-worker of mine who I
see daily. He is also a Physical Science Technician. I have known James since I began working as a
Physical Science Technician approximately 13 years ago. Special Agent McCartney asked me if I
know Chief Kirk Hill. I did not know Chief Hill's name until the incident occurred, however, I have
known him by his face for approximately three or four months. Somebody at the gym told me his
name when I identified him as the person who assaulted James Foster on 05MAR02. I am unsure
whom I identified him to. I have known him for months from working out in the weight room at 80-
H and occasionally playing basketball with him. He is a white male approximately 509/510 tall and is
in extremely good shape. He used to do pull ups and I know him to be a pretty strong guy. I have
played basketball with him approximately six times. I would always pick him to be on my team,
because he is not a very good basketball player and they would always pick him last so I felt sorry for
him and I would pick him. I can definitely identify him if I saw him in the future.

On 05MAR02, Chief Hill played basketball with us, but James Foster did not. After we finished
playing basketball, we all went to the weight room and lifted. I know an HM1 first name Mark who
works at the educational service office at the Hospital. Mark played basketball with us and went to the
weight room with us after the game. When I left for the locker room, Mark was still in the weight
room with Chief Hill. James Foster and I walked to the locker room together and Foster went in first.
We showered then went to our respective locker stalls to dress. Fosters stall was directly inside
the door to the locker room. Foster's locker stall was directly inside the locker room around the
immediate corner from the west side door. Chief Hall came into the locker room.

EXHIBIT (10)

NCIS 5580/26 (1/2001)                                        (Formerly NCISFORM 016/04-81)

Continuation of voluntary sworn statement of
Theodore (NMN) Runnels, 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, DOB: 13NOV61
on March 7, 2002

I was bent over tying my shoes when I looked up and saw Chief Hill walk through the door to the locker room. He looked me in the eye and I looked him in the eye. He had a silver metal bar in his hands and he walked in the direction of James Foster's stall and I saw him swing the silver metal bar like a baseball bat. I heard the bar strike something because it made a large thumping sound. I did not see the bar make contact with Foster's head, because ~~I was bent over tying my shoes and~~ I was in my locker stall and James was in his. I did see Chief Hill swing the bat and heard it connect. I then heard Foster hit the floor. Chief Hill then exited the locker room and I walked over to see what happened and I found James Foster on the floor and blood was everywhere. James was lying on his back and blood was pooling behind his head. It looked as though he had been shot and the blood puddle was growing as he bled. It was approximately one to two feet in diameter as it was continuing to grow. There was a large pool of blood. I panicked and did not know what to do. I checked to see if James was breathing without touching him and I determined he was still breathing. I then went running upstairs and I dialed 911 which was stupid because it does not go through on the base. Then I continued to dial a number to reach help. The HM1 named Mark I described above, then asked me what happened. I told him that Foster just got hit with a metal bar and he asked me who did it and Chief Hill was in the front office getting his coat and I pointed at him and said he did it. Chief Hill then looked at me with a look like "why did you tell" Chief Hill then zipped his coat, went to the front door stood at the door for a second looking at me dialing for help and then walked out, got in his red 1980's Nova, warmed it up and drove to another parking lot. I lost track of Chief Hill after that. Some one who was helping me reach the police told me that the person I pointed at and whom I saw swing the metal bar in Foster's direction is named Chief Hill. This is how I know his name, however, I have known him by face for approximately three or four months.

While talking with SA McCartney, SA Harrison brought in a silver metal bar with an evidence label on it. The bar SA Harrison and SA McCartney showed me looks identical to the bar Chief Hill swung at James Foster.

SA McCartney also asked me if I saw the bar hit Foster's head and I did not. I was talking to Foster and he was talking back at me when Chief Hill came in with the bar. I specifically recall Foster talking and when I saw Chief Hill swing the bar in Foster's direction Foster stopped talking abruptly and this is when I heard Foster hit the floor. Chief Hill's motion was fluid without hesitation when he swung the bar towards Foster.

Page 2 of 3

NCIS 5580/26 (1/2001)                                                          (Formerly NCISFORM 016/04-81)

Continuation of voluntary sworn statement of
Theodore (NMN) Runnels, 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, DOB: 13NOV61
on March 7, 2002

The whole time I knew Chief Hill which is about three or four months, he rarely has said one or two words to me. I saw him often at the gym and I could identify him again if I ever saw him. As I said he has very distinctive characteristics.

This statement, consisting of this page and 2 other page(s) was typed for me by Special Agent James E. McCartney as we discussed its contents. I have read and understand the above statement. I have been given the opportunity to make any changes or corrections I desire to make and have placed my initials over the changes or corrections. This statement is the truth to the best of my knowledge and belief.

Signature: _____

Sworn to and subscribed before me this __7th__ day of __March__ in the year __2002__ at

__1455__    NTC Great Lakes, IL.

Witnessed: James e. McCartney

_____
Representative, Naval Criminal Investigative Service
AUTH: DERIVED FROM ARTICLE 136,
UCMJ (10 U.S.C. 936) AND 5 U.S.C. 303

Page 3 of 3

## STATEMENT

Place : Great Lakes. IL
Date  : March 8. 2002

1. HM1 Elijah (NMN) Rahman. 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. DOB: 28JAN64, make the following free and voluntary statement to Special Agent James E. McCartney whom I know to be a Special Agent of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of Chief Hill getting a silver metal bar from the lat machine on 05MAR02 and putting it back the same date.

For identification purposes I am a black male standing 71" weighing 175 pounds with black hair and brown eyes. I am assigned to Naval Hospital great lakes, IL at the Director of Fleet Medicine Office. My work phone number is (847) 688-2616. I reside at 29597 North Waukegan Road #202 Lake Bluff, IL 60044. My home phone number is (847) 615-0248. I HAVE ORDERS TO NAVAL SECURITY STATION BRANCH CLINIC WASHINGTON DC, DUE TO REPORT 08AUG02.

On 05MAR02, I was lifting in the weight room at the Hospital Gymnasium building 80-H when a white male standing approximately 601 with a ball cap on, white shirt and blue shorts. I now know this person to be Chief Hill from other people who were at the gymnasium that day. I can not specifically recall who the person or persons were who told me his name, but after the assault occurred that day, I was told that the guy who did it was named Chief Hill.

The person I know as Chief Hill walked into the weight room took the silver bar approximately two feet in length and walked out of the weight room with it. I recall this event because I thought it was out of the ordinary and I recall saying to myself, why would he take that bar out of the weight room unless he was stealing it or using it for another exercise outside the weight room. I thought he may have taken to hit someone, because I could not understand any other reason for taking that bar out of the weight room. Approximately a minute later Chief Hill came back and hung the bar back up on the Universal Machine. Chief Hill did not seem angry when he pulled the bar off the machine and he did not look angry when he put the bar back. Approximately five to ten minutes later, I went out to the front desk area to see what was going on and I found out that some guy hit another guy in the head with a bar.

Special Agent Showed me a silver bar with a evidence label attached to it. This bar looks the same as the bar that Chief Hill took from the weight room and then replaced a minute later. I know James Foster by his face, but did not know his name until Agent McCartney told me his name. I did not see Chief Hill or Foster get into any type of altercation prior to the incident on 05MAR02.

EXHIBIT (11)

Continuation of voluntary sworn statement of
HM1 Elijah (NMN) Rahman, 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, DOB: 28JAN64
on March 8, 2002

Chief Hill and I made eye contact when he left the weight room. The look on Chief Hills face when he left the weight room was a look like I have finished what I was doing and I am leaving. He did not look crazed or in rage.

I believe I could identify Chief Hill if I saw him again.

This statement, consisting of this page and 1 other page(s) was typed for me by Special Agent James E. McCartney as we discussed its contents. I have read and understand the above statement. I have been given the opportunity to make any changes or corrections I desire to make and have placed my initials over the changes or corrections. This statement is the truth to the best of my knowledge and belief.

Signature: _____

Sworn to and subscribed before me this _8th_ day of _MARCH_ in the year _2002_ at

_1030  IN  GREAT LAKE , IL_ _____

Witnessed: _JAMES E. MCCARTNEY_        _____
                                        Special Agent, U.S.Naval Criminal Investigative Service
                                        AUTH: SECNAVINST 5520.3B OF 04JAN93

NCIS 5580/26 (2/1999)                                    (Formerly NCISFORM 016/04-81)

US                                    0066

## STATEMENT

Place : NCISRA GREAT LAKES, IL
Date  : March 11, 2002

I, MORGAN DAVID SHEPHERD, HN USN, make the following free and voluntary statement to JOHN WEIMER whom I know to be a Representative of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of JAMES FOSTER BEING TRANSPORTED TO THE NAVY HOSPITAL GREAT LAKES, IL ON 05MAR02

FOR PURPOSES OF IDENTIFICATION I AM A WHITE MARRIED MALE. I WAS BORN ON 02AUG80, AT FORT PIERCE, FL. I AM ASSIGNED TO RESCUE AMBULANCE (3) AS A BASIC EMT AT THE NAVAL HOSPITAL GREAT LAKES, IL.

AT APPROXIMATELY 1233 RESCUE UNIT (3) WAS CALLED TO BUILDING 80-H THE GYM. WE WERE TOLD A MALE HAD GOTTEN HIT ON THE HEAD WITH A BAR BELL. BRETT CRANSTON HN USN WAS THE TEAM LEADER AND GRIFFIS A SN WAS RIDE A LONG STUDENT. GRIFFIS ALSO IS A STATE QUALIFIED PARAMEDIC IN THE STATE OF GEORGIA.

UPON ARRIVAL WE FOUND THE VICTIM, JAMES FOSTER A BLACK MALE STANDING UP NUDE INSIDE OF THE MALE LOCKER ROOM IN THE BASEMENT OF THE GYM. WE WERE TRYING TO CALM HIM DOWN SO WE COULD EXAMINE HIS INJURIES. FOSTER WAS NOT BEING COOPERATIVE AND WE HAD TO HOLD HIM STILL FOSTER HAD BLOOD ON THE RIGHT SIDE OF HIS HEAD, THERE WAS BLOOD IN HIS EAR AND BLOOD COMING OUT OF HIS MOUTH. THERE WERE TWO POOLS OF BLOOD ON THE FLOOR AND ABOUT 1-2 TOWELS SOAKED WITH BLOOD ON THE FLOOR. WE ATTEMPTED TO HOLD 4 X 4 PATCHES ON HIS WOUND. FOSTER HAD A 3-4 INCH LACERATION ABOVE AND BEHIND HIS RIGHT EAR. FOSTER WAS PUTTING HIS FINGERS INTO THE WOUND AND PULLING ON IT. FOSTER WAS NOT RESPONSIVE TO US. HE DID NOT KNOW WHO HE WAS OR WHERE HE WAS. WE CALLED A SECOND AMBULANCE TO ASSIST US.

CRANSTON SENT ME UP TO THE AMBULANCE TO GET THE SPINE BOARD, HEAD BLOCKS, AND STRAPS. WHEN I RETURNED FOSTER HAD HIS PANTS ON.

FOSTER KEPT SAYING HE NEEDED SOME FRESH AIR TO COOL OFF. WE TRIED TO GET FOSTER SOME FRESH AIR BY TAKING HIM INTO THE HALLWAY. FOSTER WOULD NOT COOPERATE BY GETTING ONTO THE SPINE BOARD. WE GOT SOME VITAL SIGNS I THEN LEFT TO GET THE OXYGEN CANNISTER. WE GAVE FOSTER SOME OXYGEN AND BANDAGED HIS HEAD AGAIN. A FEMALE LT TALBOT WHO KNEW FOSTER HELPED CALM HIM DOWN.

11MAR02

NCIS 5580/26 (1/2001)                                    (Formerly NCISFORM 016/04-81)

EXHIBIT (13)

US                                    0069

Continuation of voluntary sworn statement of
JOSEPH AARON HUTCHINSON, HM3 USN
on March 11, 2002

WE WERE THEN ABLE TO GET HIM INTO A STAIR CHAIR TO GET HIM UP THE STAIRS BECAUSE HE WOULD NOT LAY DOWN ON THE BACK BOARD.

WHEN WE GOT HIM UPSTAIRS WE HELPED HIM LAY DOWN ON THE GURNEY. FOSTER HAD TORN THE BANDAGES OFF HIS HEAD AGAIN. I WAS HOLDING THE BANDAGES ON HIS WOUND AGAIN. WE PLACED HIM INTO RESCUE (3). LT TALBOT, JOSEPH HUTCHISON, BRETT CRANSTON GOT INTO THE BACK OF THE AMBULANCE WITH FOSTER AND DANIEL FLECK HA USN DROVE THE AMBULANCE TO THE TO THE NAVAL HOSPITAL. I STAYED BEHIND AND GATHERED UP ALL THE EQUIPMENT AND THROUGH IT INTO THE BACK OF THE AMBULANCE AND WENT TO THE HOSPITAL.

FOSTER NEVER SAID WHAT HAD HAPPENED TO HIM NOR DID HE SAY WHO HAD HIT HIM.

I AM INCLUDING A COPY OF THE 05MAR02 RUN SHEET WITH MY STATEMENT.

This statement, consisting of this page and 1 other page(s) was typed for me by  as we discussed its contents. I have read and understand the above statement. I have been given the opportunity to make any changes or corrections I desire to make and have placed my initials over the changes or corrections. This statement is the truth to the best of my knowledge and belief.

Signature: _____

Sworn to and subscribed before me this 11 day of March in the year 2002 at

NCISRA GREAT LAKES IL .

Witnessed: _____

Representative, Naval Criminal Investigative Service
AUTH: DERIVED FROM ARTICLE 136,
UCMJ (10 U.S.C. 936) AND 5 U.S.C. 303

NCIS 5580/26 (1/2001)                                    (Formerly NCISFORM 016/04-81)

# UNITED STATES NAVAL HOSPITAL GREAT LAKES
## EMERGENCY MEDICAL SERVICES REPORT

**DEPARTMENT #**

Nature of Call: Hazard burn     M 03 D 5 Y 02

| Patient Name (Last, First etc..) | SSN | Age | Gender | DOB | Location: |
|---|---|---|---|---|---|
| Foster James Hall | 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 | 49 | M | 4-8-52 | 80-4 |

| Address: | City: | State: | Zip: | Unit# | Call Sign: | Incident Number: |
|---|---|---|---|---|---|---|
| Unknown | Unknown | Unknown | Unknown | 1945 | R-3 | 1231 |

| Chief Complaint: | Status (AD, Recruit, Dep etc...) | Received Call: 1233 |
|---|---|---|
| Laceration / Combative | Civ | Enroute: 1233 |

| Medical History | Mechanism of Injury  O None | On Scene: 1235 |
|---|---|---|
| Unknown | hit with 5lb weight | Depart Scene: 1254 |

| Medications  O None  ● Unknown | Allergies  O NKDA ● Unknown | Patient Number | At Hospital: 1258 |
|---|---|---|---|
| Unknown | Unknown | 1 of 1 | In Service: 1400 |

## Vital Signs

| TIME | RESP | B/P | PULSE | SPO2 % | TREATMENT (IV SOLUTION, RATE, GLUCOMETER, OXYGEN) |
|---|---|---|---|---|---|
| 1240 | 24 | 160/110 | 78 | 98 | IV 18g @AC NS@ bolus Rate, O₂ 15L |
| 1245 | 20 | 172/112 | 80 | 96 | NRB C-Spine precautions (Pt removed), Bandage |
| 1250 | 18 | 174/116 | 72 | 95 | Abd Dressing/Kerlix to R side of Head superior posterior to R ear |

| Mental status | Pupils | Lung Sounds | Resp Effort | Skin | O Appears Normal |
|---|---|---|---|---|---|
| O Conscious | L R | L R | O Normal | O Cyanotic | O Cold |
| ● Combative | O O PERRL | ● O Clear | O Absent | O Flushed | ● Cool |
| ● Disoriented | O O Dilated | O O Decreased | ● Decreased | ● Pale | O Hot |
| O Lethargic | ● ● Pinpoint | O O Rales | O Labored | | O Dry |
| O Unconscious | O O Unresponsive | O O Stridor | | | ● Moist |
| | | O O Wheezing | | | |

| Treatment | 1 | 2 | 3 | 4 | Comments: |
|---|---|---|---|---|---|
| Vital Signs | X | X | X | | Arrived on scene to find a Black male standing in locker room, shortly |
| Assessment | X | X | X | | badly being restrained. Male bleed profusely from R side of his head approx 3 inches in length. Male was hit in head c a bar bell at the Gym BOH. According |
| Glucometer | | | | | Pt headed to stairs where he became very light headed. Combative. HM¹ Dillinger arrived |
| Oral Gluc | | | | | pressure to lac. Pt very uncooperative tearing off bandage refusing C-Spine procedure |
| IV Started | X | | | | By king Ems personnel (Rescue #1 called to assist calmed Pt + caught his arm in sling |
| IV Missed | X | | | | chase. O₂ applied 15L NRB. Dressing applied Abd c kerlix. Pt placed fingers into |
| Blood Draw | X | | | | laceration, ripped laceration open further. 4½ inch. Bleed noted coming out of R ear |
| Airway Nasal | | | | | O₂ drain. Pupils 2cm very slow to react. Placed Pt on gurney and to back of ambulance |
| Airway Oral | | | | | 18g IV started L AC c flushback NS@ bolus Rate. Medical control called by LT Gacui. Tell |
| Nasal Cannula | | | | | to transport to 200H ER. Trauma Rm c Pt would not answer any ?'s enroute. Very combative. Arrived c no change |
| Nonrebreather | | X | | X | |
| Combitube | | | | | |
| Suction | | | | | |
| Ventilation | | | | | |
| Bandaging | X | X | X | | |
| Backboard | | | | | |
| C-Collar | | | | X | |
| Splinting | | | | | |
| SAD | | | | | |
| Driver | X | | | X | |

**Med. Direction:**
By: IZENSEN (Gacui)

**Transported To:**
200H ER  ●
200H  O
BMC 1007  O
BMC 237  O
AMA  O
Other (i.e. Lake Forest):

**Pt. Condition in route:**
O Same
O Improved
O Worse

**Crew** Status RC H
1. Kranstar
2. Shepherd
3. Griffis (Studet)
4. Fleck Hutchinson

**Response**
To Scene:  Code 1 or 3
To Hospital: Code 1 or 3

**Weather Conditions:**
O Clear  O Rain ● Snow/Ice
O Fog  O Sleet/Hail

**Communication:**
Good Bad
● O  Cell Phone
● O  Radio
O O  Telephone

**Assisted by:**
GLPD: O
Name: Rollins Kerri
GLFD: O
Engine #:
Other: Name # 1 Fleck/Hutchinson

| Accepting Signature: | Tape # | QA & I Review By: | Forward for further Review: Yes O  No O |
|---|---|---|---|

## STATEMENT

Place : Great Lakes, Il
Date : March 15, 2002

_LCV_ I, SH1 LUIS COPE VILLANUEVA JR. 02FEB59, 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, make the following free and voluntary statement to JAMES E. MCCARTNEY whom I know to be a Special Agent of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of THE ASSAULT I SAW ON 05MAR02 IN THE LOCKER ROOM OF BUILDING 80-H. _LCV_

_LCV_ FOR IDENTIFICATION PURPOSES I AM A PHILLIPINO MALE STANDING 70 INCHES WEIGHING 165 POUNDS WITH BLACK HAIR AND BROWN EYES. I WAS BORN IN TABACO, RP. I AM CURRENTLY ASSIGNED TO THE NAVAL HOSPITAL GREAT LAKES, IL. MY WORK PHONE NUMBER IS (847) 688-4564 EXTENSION 109. I CURRENTLY RESIDE AT 2442 B NEW YORK AVENUE GREAT LAKES, IL 60088. MY HOME PHONE NUMBER IS (847) 689-0131. _LCV_

_LCV_ ON 05MAR02, I WAS WORKING OUT IN THE WEIGHT ROOM IN 80-H. JAMES FOSTER WAS WORKING OUT ALSO. I HAVE KNOWN JAMES FOSTER FOR ABOUT THREE OR FOUR MONTHS FROM WORKING OUT WITH HIM IN THE WEIGHT ROOM. I HAVE SPOTTED HIM AND HE HAS SPOTTED ME ON CERTAIN EXERCISES. _LCV_

_LCV_ WHEN I FINISHED MY WORKOUT, I WENT TO THE LOCKER ROOM UNDRESSED AND AND WEIGHED MY SELF. I SAW TED SITTING ON THE BENCH WITH A TOWEL ON. I SAW JAMES FOSTER ALSO. I HAD A LOCKER ON THE WEST SIDE OF THE LOCKER ROOM AND JAMES AND TED WERE ON THE NORTH SIDE OF THE LOCKER ROOM. I WENT TO THE SHOWER. WHEN I CAME OUT OF THE SHOWER I DRIED OFF AND BEGAN TO DRESS. AS I BEGAN TO TUCK IN MY SHIRT, I SAW A WHITE MALE WHO I NOW KNOW AS CHIEF HILL WALK INTO THE LOCKER ROOM WITH A SILVER BAR APPROXIMATELY TWO FEET IN LENGTH IN HIS RIGHT HAND. HE WAS WALKING LIKE HE WAS HIDING THE BAR. THE FIRST THING I THOUGHT WAS THAT HE WAS STEALING THE BAR BECAUSE OF THE WAY HE WAS HOLDING IT AS IF HE WAS HIDING IT. CHIEF HILL LOOKED AT ME OUT OF THE CORNER OF HIS EYES. HE THEN FLIPPED THE BAR OVER, CAUGHT THE OTHER END OF IT AND SWUNG IT FROM THE FLOOR OVERHAND IN THE DIRECTION OF JAMES FOSTER. I HEARD FOSTER CRY OUT WITH A VERY LOUD MOAN AND A THUG OF FOSTER FALLING ON THE FLOOR. CHIEF HILL THEN TURNED AROUND AND LOOKED AT ME WITH A VERY SHARP LOOK IN HIS EYES LIKE HE WAS SAYING TO ME "DO YOU WANT SOME OF THIS?" HE WAS STANDING IN WITH THE BAR IN HIS HAND IN AN OFFENSIVE POSTURE. HE SAID NOTHING AND I FROZE BECAUSE I WAS UNSURE IF HE WAS GOING TO ATTACK ME TOO. CHIEF HILL THEN TURNED AND WALKED OUT OF THE LOCKER ROOM. I SAT DOWN ON THE BENCH IN SHOCK. I FELT GUILTY THAT I DID NOT DO ANYTHING, BUT FELT LIKE I WAS IN SHOCK AND I DIDN'T KNOW WHAT TO DO. _LCV_

15 MAR 02
Page 1 of 2

NCIS 5580-26 (2/1999)

EXHIBIT (14)

(Formerly NCISFORM 016/04-81)

TED THEN SAID TO ME HEY DUDE LETS HELP HIM. I THEN WALKED OVER TO JAMES FOSTER AND HE WAS LYING DOWN IN THE FETAL POSITION WITH BLOOD COMING OUT OF HIS MOUTH AND GROANING LIKE HE WAS TRYING TO BREATH. HIS EYES WERE CROSS-EYED AND THERE WAS A LOT OF BLOOD COMING OUT OF TH BACK OF HIS HEAD. I PLACED MY HAND BEHIND FOSTERS HEAD AND TRIED TO KEEP IT FROM BLEEDING MORE AND I NOTICED THAT THE WOUND WAS SIX TO SEVEN INCHES LONG AND ABOUT ONE INCH WIDE. THE WOUND WAS APPROXIMATELY ONE INCH ABOVE THE EAR. FOSTER WAS PULLING ME DOWN AND TRYING TO TALK TO ME, BUT HE COULDN'T SPEAK.    I GOT A TOWEL AND PLACED IT BEHIND FOSTERS HEAD AND I GOT TWO GUYS WHO WERE IN THE SAUNA TO COME AND HELP AND I WENT UPSTAIRS TO GET MORE TOWELS. I AM UNSURE WHO THE TWO GUYS IN THE SAUNA WERE. I GOT THREE MORE TOWELS AND THEN IN THREE MINUTES THE AMBULANCE CAME AND TOOK OVER. I THEN CLEANED UP AND WENT BACK TO WORK.

SA MCCARTNEY ASKED ME IF I CAN IDENTIFY CHIEF HILL IF I SEE HIM AGAIN. I HAD HEARD OF CHIEF HILL BY NAME OVER THE PAST SEVERAL MONTHS. I CAN IDENTIFY THE MAN WHO HIT FOSTER WITH THE BAR IF I SEE HIM AGAIN. I DID NOT KNOW IT WAS CHIEF HILL UNTIL I WENT UPSTAIRS AND ONE OF THE PATRONS OR EMPLOYEES OF 80-H SAID THE GUY WHO HIT FOSTER WITH THE BAR IS CHIEF HILL.

I HAVE READ AND REVIEWED THIS STATEMENT CONSISTING OF TWO PAGES WHICH WAS PREPARED FOR ME BY SA MCCARTNEY AS WE DISCUSSED THE CONTENTS. NO THREATS AND OR PROMISES HAVE BEEN MADE TO ME.  IT IS THE TRUTH TO THE BEST OF MY KNOWLEDGE AND BELIEF. I HAVE MADE ANY NECESSARY CORRECTIONS ND INTIALED THE SAME.

15 MAR 02   0945
LUIS C. VILLANUEVA        DATE        TIME

SUBSCRIBED AND SWORN TO BEFORE ME THIS 15TH DAY OF MARCH 2002 AT GREAT LAKES, IL.

15 MAR 02  0945
James E. McCartney, Special Agent  Date    Time

AUTH:  DERIVED FROM ARTICLE 136, UCMJ
(10  U.S.C. 936) AND 5 U.S.C. 303

## STATEMENT

Place  :  Great Lakes, Il
Date   :  March 15, 2002

 I, HMCM ALFREDO BOSAS JOCOSING, 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 04OCT52, make the following free and voluntary statement to JAMES E. MCCARTNEY whom I know to be a Special Agent of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of A WHITE MALE WHO TOOK THE SILVER BAR FROM THE UNIVERSAL MACHINE ON 05MAR02 IN BUILDING 80-H AND THEN BRING THE BAR BACK AND REPLACE IT.

 FOR IDENTIFICATION PURPOSES I AM A PHILLIPINO MALE STANDING 67 INCHES TALL WEIGHING 180 POUNDS WITH BLACK HAIR AND BROWN EYES. I WAS BORN IN NAIC CAVITE, RP. I AM CURRENTLY ASSIGNED TO THE NAVAL HOSPITAL GREAT LAKES, IL. MY WORK PHONE NUMBER IS (847) 688-7355. I CURRENTLY RESIDE AT BUILDING 219-H ROOM 310 ABOARD NAVAL TRAINING CENTER GREAT LAKES, IL  60088. MY HOME PHONE NUMBER IS (847) 578-0120.

 ON 05MAR02, AT APPROXIMATELY 1200 I WAS WORKING OUT IN THE WEIGHT ROOM IN 80-H. HM1 RAHMAN WAS IN THE WEIGHT ROOM WITH ME. I RECALL A WHITE MALE WEARING WHITE T-SHIRT WEARING A KAKI BALL CAP WALK INTO THE WEIGHTROOM AND TAKE THE SILVER STAINLESS STEEL BAR FROM THE UNIVERSAL MACHINE AND WALKED OUT OF THE WEIGHT ROOM WITH IT. I THOUGHT TO MYSELF, WHERE IN THE HELL IS HE TAKING THIS BAR. THERE WAS NO OTHER WEIGHTROOM IN THE BUILDING. HE APPEARED TO BE VERY COMPOSED AND CALM. HE WAS NOT IN A HURRY WHEN HE GOT THE BAR AND LEFT THE WEIGHT ROOM. ABOUT FIVE MINUTES LATER, THE SAME WHITE MALE CAME BACK INTO THE WEIGHT ROOM AND PLACED THE SILVER BAR BACK ON UNIVERSAL MACHINE. HE THEN WALKED OUT OF THE WEIGHT ROOM.



**EXHIBIT (15)**

PAGE TWO OF STATEMENT OF HMCM ALFREDO JOCOSING 15MAR02

I BELIEVE I COULD IDENTIFY THE WHITE MALE IF I SAW HIM AGAIN. I AM UNSURE WHAT HIS NAME IS AND NO ONE TOLD ME WHAT HIS NAME WAS. I WAS JUST TOLD THAT THE GUY WHO ASSAULTED THE VICTIM IN THE LOCKER ROOM WAS A NAVY SEAL.

I HAVE READ AND REVIEWED THIS STATEMENT CONSISTING OF TWO PAGES WHICH WAS PREPARED FOR ME BY SA MCCARTNEY AS WE DISCUSSED THE CONTENTS. NO THREATS AND OR PROMISES HAVE BEEN MADE TO ME. IT IS THE TRUTH TO THE BEST OF MY KNOWLEDGE AND BELIEF. I HAVE MADE ANY NECESSARY CORRECTIONS ND INITIALED THE SAME.

_____ 3/15/02 104:
ALFREDO B. JOCOSING    DATE    TIME

SUBSCRIBED AND SWORN TO BEFORE ME THIS 15TH DAY OF MARCH 2002 AT GREAT LAKES, IL.

_____ 15MAR02 1043
James E. McCartney, Special Agent Date    Time

AUTH: DERIVED FROM ARTICLE 136, UCMJ
(10 U.S.C. 936) AND 5 U.S.C. 303

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    S/HILL, KIRK L./HMC USN
CCN:     05MAR02-GCGL-0081-7GNA

INVESTIGATIVE ACTION:    RESULTS OF INTERVIEW WITH V/FOSTER

On 18MAR02, reporting agent interviewed V/FOSTER at Mary Therese Durkin's residence 4447 West Brownstone Way Waukegan, IL 60085 (847) 336- 2587.  V/FOSTER said that he resides with Ms. Durkin during the night and he stays at his residence 2128 Elmwood Apartment 2A Waukegan IL  60087 (847) 263-5093 during the day until 2:00 pm.  V/FOSTER was advised he was being interviewed for his knowledge of the assault on his person at building 80-H aboard Naval Training Center Great Lakes, IL on 05MAR02.

V/FOSTER advised he is currently employed as a civilian at the Navy Drug Screening Laboratory, building 38-H as a Supervisor in the Confirmation Department.  He stated that he has been employed there since 1983.  V/FOSTER said his work hours are 0530 to 1430.  V/FOSTER said he usually works out at 80-H three times a week.  He said he usually takes a sauna and lifts weights.  He said he used to play basketball, however, he does not play basketball anymore because of a leg injury.

On 05MAR02, V/FOSTER said he sat in the sauna then went upstairs to the weight room in building 80-H.  He said while he was lifting in the weight room, Ted Runnels, a friend and co-worker came in from the basketball courts and lifted with him.  He said he and Ted then went downstairs to the locker room.

V/FOSTER could recall very little about the assault.  He could not recall if it was before or after he showered.  He could not recall exactly where he was in the locker room, only that he recalled being in the locker room.  V/FOSTER said he recalled his assailant attacked him from behind and struck him in the back right side of his head.  He said he did not see his assailant and much of his memory of what happened just before he was struck is blurry.  V/FOSTER stated he is sure that he did not get into an argument with anyone and he did not provoke his assailant.  He said he did not see his assailant coming because he was attacked from behind.  V/FOSTER said he has martial arts training and said that if he would have had a chance he would have tried to defend himself.  He said he can not identify his assailant.  He said that he recalls nothing from the time he was struck until the time he woke up in Evanston Hospital.  He said his hands and feet were tied down and when he woke up, he thought it was a dream.

He said that all he knows about the incident is what he has heard from his friends and eyewitnesses who saw what happened or were in the gym.  He said from what his friends told him, He does not know S/HILL and has never seen him before.  V/FOSTER said he has never worked out with S/HILL and never played basketball with him that he can recall.  V/FOSTER said he did not have any type of argument or altercation with S/HILL or anyone else that would have provoked the incident.

V/FOSTER said he was active duty Navy for 10 or 11 years.  He said he served during the Vietnam Conflict's Operation Homecoming and he served active for one year during Desert Storm.  He said he was going to volunteer for activation after the September 11 attacks on the Pentagon and New York City, however, when he called to do so, he found his reserve unit had been dissolved.

V/FOSTER said he currently suffers from a blood clot on his brain, impaired speech, impaired hearing in his right ear, impaired vision in both eyes and a skull fracture as a result of the attack on him 05MAR02.  V/FOSTER said he will not know if any of his damage is permanent until he follows up with his Doctor's.

Reported By:    Special Agent James E. McCartney
Office:         NCISRA Great Lakes, IL

WARNING      EXHIBIT (16)

PAGE 1 OF 1

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO  CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

---

STATEMENT

PLACE: _NAVAL HOSPITAL GREAT LAKES, IL_

DATE: _19 MAR 02_

---

*MID* I, _HM1 MARK I. DILLENDER, 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, DOB: 21 JUL 59_, make the following free and voluntary statement to _JAMES E. McCARTNEY_ whom I know to be a Special Agent of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of _THE ASSAULT OF JAMES FOSTER ON 05MAR02 IN Building 80-H. MID_

*MID* I AM A WHITE MALE STANDING 68" TALL, WEIGHING 175 POUNDS WITH BLACK HAIR AND BROWN EYES. I WAS BORN IN MARTINSVILLE, IN. I AM ASSIGNED TO NAVAL HOSPITAL GREAT LAKES, IL IN THE EDUCATION AND TRAINING DEPARTMENT, 10TH FLOOR EAST (847) 688-2205. I RESIDE IN BARRACKS 219-H ROOM 105 ABOARD NAVAL TRAINING CENTER GREAT LAKES, IL. MY CELL PHONE NUMBER IS (847) 942-3725. MID

*MID* ON 05MAR02 I PLAYED BASKETBALL WITH TED RUNNELS AND A NAVY SEAL WHO I NOW KNOW AS CHIEF HILL. JAMES FOSTER DID NOT PLAY BASKETBALL WITH US. AFTER PLAYING, I WENT TO THE WEIGHTROOM IN Building 80-H. MID

*MID* I WALKED OUT OF THE WEIGHTROOM BETWEEN SETS OF EXERCISES WHEN TED RUNNELS WAIVED ME OVER TO THE FRONT DESK. HE SEEMED EXCITED. HE WAS ON THE PHONE. HE TOLD ME THAT "THAT GUY JUST HIT JAMES" I ASKED WHAT GUY AND HE AND I WALKED OUTSIDE AND HE POINTED AT CHIEF HILL WHO WAS IN HIS REDDISH ORANGE CAR DRIVING AWAY. TED SAID "THAT GUY" AS HE POINTED AT CHIEF HILL. MID

*MID* I did NOT KNOW CHIEF HILL BY NAME AT THE TIME. SOME-ONE AT 80-H GYMNASIUM TOLD ME THE GUYS NAME WAS CHIEF HILL THAT TED IDENTIFIED TO ME. I HAD SEEN CHIEF HILL SEVERAL TIMES AT THE HOSPITAL. IT WAS COMMON KNOWLEDGE THAT CHIEF HILL WAS A PSYCHIATRIC PATIENT AT THE HOSPITAL. I HAD SEEN CHIEF HILL ON THE ELEVATOR AND AT THE CHRISTMAS PARTY AT THE HOSPITAL. MID

PAGE 1 OF 3    EXHIBIT (19)    _Mark I. Dillender_

NCISF - 016/04-81

REPRODUCED AT GOVERNMENT EXPENSE

Page __2__ of voluntary statement of __HM1 MARK IRVIN DILLENDER__

SSN: __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__   Date: __19 MAR 02__

MID) I WOULD RECOGNIZE THE SEAL, CHIEF HILL IF I SAW HIM AGAIN. I HAVE ONLY PLAYED BASKETBALL WITH CHIEF HILL ONCE. MID)

MID) AFTER CHIEF HILL DROVE AWAY, I WENT BACK INSIDE WITH TED AND I CALLED HOSPITAL SECURITY AND REPORTED THE INCIDENT. AFTER I HUNG UP I WENT DOWNSTAIRS TO THE LOCKERROOM. HM1 PARENTEAU WAS WITH JAMES FOSTER HOLDING A TOWEL TO FOSTERS HEAD. FOSTER WAS SITTING ON A BENCH AND KEPT STANDING UP AND DOWN AND WAS MOANING. FOSTER WAS BLEEDING FROM HIS MOUTH, HEAD AND EAR. I OBSERVED AN APPROXIMATELY 4 1/2 TO 5 INCH CUT ABOVE AND BEHIND HIS RIGHT EAR. SH1 VILLANUEVA WAS HELPING TO SUPPORT JAMES FOSTER. I SPENT ABOUT 15 MINUTES HELPING SUPPORT FOSTER UNTIL THE EMERGENCY MEDICAL TECHNICIANS AND THE AMBULANCE ARRIVED. MID)

MID) I HAVE KNOWN JAMES FOSTER AND TED RUNNELS SINCE AT LEAST 1993. I HAVE BEEN ASSIGNED TO GREAT LAKES THREE DIFFERENT TIMES AND I MET THEM DURING MY FIRST OR SECOND TOUR. MID)

Page 2 OF 3

*Mark I Dillender*

REPRODUCED AT GOVERNMENT EXPENSE

Page __3__ of voluntary statement of _HM1 MARK IRVIN DILLENDER_

SSN: __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__    Date: __19MAR02__

MID I DID NOT SEE ANY ALTERCATION BETWEEN CHIEF HILL AND JAMES FOSTER ON 05MAR02 OR FOR THAT MATTER ANYTIME. JAMES FOSTER IS THE LAST PERSON TO HAVE CONFLICT WITH ANOTHER PERSON. JAMES IS AN EVEN TEMPERED GUY. FROM WHAT I KNOW OF JAMES, HE IS NON AGGRESSIVE. MID

MID I HAVE READ AND REVIEWED THIS STATEMENT CONSISTING OF 3 PAGES WHICH WAS PREPARED FOR ME BY SPECIAL AGENT MCCARTNEY AS WE DISCUSSED THE CONTENTS. I HAVE HAD THE OPPURTUNITY TO MAKE NECESSARY CORRECTIONS AND INITIAL THE SAME. IT IS THE TRUTH TO THE BEST OF MY KNOWLEDGE AND BELIEF. MID

SIGNATURE: _Mark I Dillender_ DATE: 19MAR02 TIME: 1400

MARK I DILLENDER

SUBSCRIBED AND SWORN TO BEFORE ME THIS 19th DAY OF MARCH IN THE YEAR 2002 AT GREAT LAKES, IL 1400 HRS

SIGNATURE: _James E. McCartney_

JAMES E. MCCARTNEY, SPECIAL AGENT

AUTH: SECNAVINST 5520.3B OF 04JAN93

Page 3 OF 3

MW0137V  Case 1:05-cv-06175   Document 28   Filed 05/03/2006   Page 27 of 37
//23B/PF//

## U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

REPORT OF INVESTIGATION (INTERIM)                       13JUN02

ASSAULT (II)                      CONTROL:  05MAR02-GCGL-0081-7GNA

S/HILL, KIRK LEE/HMC USN
  M/W/NEE7/U/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/24APR65/OREGON, IL
V/FOSTER, JAMES HALL/CIV
  M/B/USXX/U/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/08APR52/CLEVELAND, OH

COMMAND/NAVAL HOSPITAL GREAT LAKES, IL/00211

MADE AT/GCGL/GREAT LAKES, IL/JAMES E. MCCARTNEY, SPECIAL AGENT

REFERENCE
(A)  NCISRA GREAT LAKES, IL ROI/03APR02

CASE SUMMARY
1.  This investigation was initiated upon receipt of information
from the Great Lakes (IL) Police Department (GLPD) that S/HILL
allegedly struck V/FOSTER on the right side of his head with a
metal bar in the Naval Hospital Corp School Gymnasium, Bldg 80-H,
Great Lakes, IL at approximately 1230 on 05MAR02 aboard the Naval
Training Center (NTC) Great Lakes, IL.

2.  Subsequent to the submission of Ref (a), the crime scene
examination completed by Participating Agent Harrison is attached
as exhibit (1).

3.  On 10JUN02, reporting agent was contacted by Lt. Andrea
Laukert, JAGC, USN Trial Counsel, TSO West, San Diego, CA who
requested V/FOSTER be re-interviewed to determine the extent of his
injuries and the identity of his Medical Doctors and counselor's,
exhibit (2) provides amplifying details.

EXHIBITS
(1)  IA: CRIME SCENE EXAMINATION/05MAR02...(copy all less GCPF)
(2)  Statement of V/FOSTER/13JUN02...(copy all less GCPF)

ACTION/LEAD
A.0023B...Investigation pending administrative/judicial action.

PARTICIPANT
Mark H. Harrison, Special Agent, NCISRA Great Lakes, IL

DISTRIBUTION
NCISHQ:  0023B (M)
NCISFO:  GCPF
INFO:  CO, NAVHOSP (H)/LEGAL NAVHOSP ATTN: LCDR MOBERG (H)/TSO EAST
       ATTN: LT MARK ROSEN (M)/TSO WEST, 3395 STURTEVANT STREET,
       SUITE 9, SAN DIEGO, CA  92136, ATTN: LT ANDREA LAUKERT (M)


FOR OFFICIAL USE ONLY
PAGE   1 LAST  NAE

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

### STATEMENT

Place  : <u>GREAT LAKES, IL</u>
Date   : <u>June 11, 2002</u>



I, <u>JAMES HALL FOSTER, 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, 08APR52</u>, make the following free and voluntary statement
to <u>SPECIAL AGENT JAMES E. MCCARTNEY</u> whom I know to be a Representative of the United
States Naval Criminal Investigative Service.  I make this statement of my own free will and without
any threats made to me or promises extended.  I fully understand that this statement is given
concerning my knowledge of ME BEING ASSAULTED ON 05MAR02.

FOR IDENTIFICATION PURPOSES I AM A BLACK MALE STANDING 509 TALL WEIGHING
230 WITH BROWNN HAIR AND BROWN EYES.  I WAS BORN IN CLEVELAND, OHIO.  I AM
CURRENTLY ON WORKMANS COMPENSATION FROM MY POSITION OF SUPERVISOR IN
THE CONFIRMATION DEPARTMENT AT THE NAVY DRUG SCREENING LABORATORY
LOCATED IN BUILDING 38H AT NAVAL HOSPITAL GREAT LAKES, IL.  I CURRENTLY
RESIDE AT 2128 ELMWOOD APARTMENT 2A WAUKEGAN, IL 60087.  MY HOME PHONE
NUMBER IS (847) 263-5093.

SPECIAL AGENT MCCARTNEY ASKED ME IF CHIEF HILL AND I HAD SOME TYPE OF
ALTERCATION THAT CAUSED HIM TO HIT ME ON 05MAR02.  I NEVER HAD ANY
PROBLEMS WITH CHIEF HILL THAT DAY OR ANY OTHER.  I HAVE NEVER SPOKE TO
HIM AND I DO NOT KNOW WHAT HE LOOKS LIKE.  I DID NOT HAVE AN ARGUMENT
WITH HIM PRIOR TO THE ASSAULT.  I DID NOT SEE HIM HIT ME, I ONLY KNOW WHAT I
WAS TOLD BY MY FRIEND TED RUNNELS AND LT. MAGGIE TALBOT WHO ROAD IN THE
AMBULANCE WITH ME.

SPECIAL AGENT MCCARTNEY ASKED ME IF I HAVE PERMANENT PHYSICAL DAMAGE
FROM THE INJURIES I SUSTAINED FROM THE 05MAR02 ASSAULT WHERE I WAS
STRUCK IN THE BACK RIGHT SIDE OF MY HEAD.

DR. BATTISTA, MY EAR, NOSE AND THROAT SPECIALIST TOLD ME I HAVE 80%
PERMANENT HEARING LOSS IN MY RIGHT EAR.  DR. BATTISTA TOLD ME THE CILICA
IN MY RIGHT EAR DETERIOATED FROM THE BLOOD THAT WAS IN MY EAR.  DR.
BATTISTA SAID THESE CELLS WERE DESTROYED AND THEY DO NOT REJUVINATE
THEMSELVES.  THE CILICA WORKS WITH MY INNER EAR TO GIVE ME BALANCE.  I DO
NOT HAVE MY BALANCE NOW.  DR, BATTISTA TOLD ME I MUST COMPENSATE FOR
THE PERMANENT LOSS OF MY BALANCE.

TWO OF THE NERVES IN MY RIGHT EYE WERE DAMAGED WHEN I WAS ASSAULTED.
THIS DAMAGE  CAUSED ME TO LOOSE THE MOVEMENT IN MY RIGHT EYE AND HAS
CAUSED ME TO HAVE DOUBLE VISION IF I DO NOT WEAR A PATCH ON MY RIGHT EYE.

MY PHYSICAL THERAPISTS HAVE TOLD ME THAT MY INJURY IS EVEN MORE
AGGRAVATED BECAUSE I HAVE DAMAGE TO MY RIGHT EAR AND RIGHT EYE.  THEY
SAY THE EAR AND THE EYE WORK TOGETHER TO MAINTAIN MY PHYSICAL BALANCE.

Page 1 of 2

*James H. Foster*

NCIS 5580/26 (1/2001)

(Formerly NCISFORM 016/04-81)

EXHIBIT (Q)

I HAVE A HARD TIME STANDING AND WALKING. I HAVE TO WALK REAL SLOW OR I WILL LOOSE MY BALANCE.

DR. BATTISTA'S PHONE NUMBER IS (847) 570-1360.

DR. ANGELA KIM, MY NEURO OPTHALMOLOGIST WHO I AM SEEING FOR MY EYE INJURY SAID THAT THE NERVES IN MY EYE MAY FIX THEMSELVES WITHOUT SURGERY. SHE WANTS TO WAIT ANOTHER TWO OR THREE MONTHS WHICH WILL BE SIX MONTHS SINCE THE INJURY TO SEE IF THE NERVES WILL REPAIR THEMSELVES. IF THEY DON'T, DR. KIM SAID SHE WAS TO DO SURGERY.

DR. KIM SAID THAT IF SHE DOES HAVE TO DO SURGERY, SHE CAN ONLY STRAIGHTEN THE EYE OUT WHICH MAY CORRECT YOUR DOUBLE VISION AND ALLOW THE RIGHT EYE TO SEE STRAIGHT AHEAD, HOWEVER, SHE SAID CAN NOT CORRECT THE ROTATION OR MOVEMENT OF THE RIGHT EYE.

DR. KIM'S PHONE NUMBERS ARE (847) 570-2000 AND (847) 657-1860.

MY SPEECH IS IMPROVING, HOWEVER, I STILL STUTTER SOMETIMES.

I SEE KAREN CASEY, MY SOCIAL WORKER WHO WANTS ME TO SEE STRESS RELIEF VIDEOS BECAUSE OF THE NIGHTMARES I HAVE FROM THE INCIDENT. I HAVE THE NIGHTMARES DEPENDING ON WHEATHER I HAVE A GOOD BAD DAY AND IF I SEE NAVY SEAL COMMERCIALS. THE NAVY SEAL COMMERCIALS REALLY TRIGGER THE NIGHTMARES. DR. COZZENS IS MY NEUROLOGIST AT (847) 570-1440

KAREN CASEY'S PHONE NUMBER IS (847) 215-9977.

WHEN I WAS HIT, I BIT THE TIP OF MY TOUNGE AND I ALMOST BIT MY TOUNGE OFF. THE TIP OF MY TOUNGE ALWAYS FEELS LIKE IT IS BURNT. I LOST THE TASTE BUDS IN THE TIP OF MY TOUNGE ALSO.

I HAVE READ AND REVIEWED THIS TWO PAGE STATEMENT WHICH WAS PREPARED FOR ME BY SPECIAL AGENT MCCARTNEY AS WE DISCUSSED THE CONTENTS. I HAVE BEEN GIVEN THE OPPURTUNITY TO MAKE ANY CORRECTIONS AND INITIAL THE SAME. IT IS THE TURTH TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_James H. Foster_          _11 June 2002_     _11:30_
JAMES H. FOSTER          DATE          TIME

SUBSCRIBED AND SWORN TO BEFORE ME THIS 11TH DAY OF JUNE, 2002 AT GREAT LAKES, IL.

_James E. McCartney_
JAMES E. MCCARTNEY, SPECIAL AGENT

AUTH: SECNAVINST 5520.3B OF 04JAN93

```
W0197V
/23B/PF//
```
U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

INVESTIGATIVE SUMMARY REPORT (PENDING)                    21OCT02

                                    CONTROL:   05MAR02-GCGL-0081-7GNA
ASSAULT (II)

S/HILL, KIRK LEE/HMC USN
  M/W/NEE7/U/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/24APR65/OREGON, IL
V/FOSTER, JAMES HALL/CIV
  M/B/USXX/U/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/08APR52/CLEVELAND, OH

COMMAND/NAVAL HOSPITAL GREAT LAKES, IL/00211

MADE AT/GCGL/GREAT LAKES, IL/JAMES E. MCCARTNEY, SPECIAL AGENT

REFERENCE
(A)   NCISRA Great Lakes ROI/21AUG02

CASE SUMMARY
1.   This investigation was initiated upon receipt of information
from the Great Lakes (IL) Police Department (GLPD).  S/HILL has
allegedly struck V/FOSTER on the right side of his head with a
metal bar in the Naval Hospital Corp School Gymnasium, Bldg 80-H,
Great Lakes, IL at approximately 1230 on 05MAR02 aboard the Naval
Training Center (NTC) Great Lakes, IL.  Investigation was completed
and S/HILL was taken to an article 32 hearing in San Diego, CA on
02JUL02.  On 21AUG02, Lt. Andrea Lockhart, Trial Counsel, Trial
Service Office West, was contacted and she advised the 706(a)
competency hearing determined S/HILL is unable to appreciate the
nature of the Courts Martial judicial proceedings and participate
in his own defense.

DETAILS
2.   Subsequent to the submission of Ref (a), reporting agent
contacted Lt. Andrea Lockhart, USN, JAGC, Trial Counsel, Trial
Service Office West, San Diego, CA who advised S/HILL is pending
separation from the U.S. Navy and transfer to the office of the
U.S. Attorney General, Department of Justice and Federal Bureau of
Prisons, where he will be remanded until he is fit to stand trail.
On 15OCT02, Lt. Lockhart provided a copy of the Staff Judge
Advocate (SJA), Navy Region Southwest memorandum to the Federal
Bureau of Prisons (BOP) regarding S/HILL'S pending transfer,
exhibit (1) pertains.  Investigation is pending separation and or
adjudication of S/HILL.
EXHIBIT
(1)   SJA Memo to the BOP/19SEP02...(Copy all less GCPF)

DISTRIBUTION
NCISHQ:  0023B (M)
NCISFO:  GCPF
INFO:    Commanding Officer Naval Hospital Great Lakes, IL (M)/TSO
         West 3395 Sturtevant Street, Suite 9 San Diego, CA 92136,
         ATTN: LT. Andrea Lockhart(M)


FOR OFFICIAL USE ONLY                      **WARNING**
PAGE  1 LAST  MJK          THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
                           CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
                           HERETO.  CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) WITHOUT SPECIFIC
                           AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
```

C-10/24

OFFICE OF THE STAFF JUDGE ADVOCATE
COMMANDER, NAVY REGION, SOUTHWEST
SAN DIEGO, CALIFORNIA 92132-0058

5800
Ser N05/3684
19 Sept 02

From:  Staff Judge Advocate, Navy Region Southwest
To:    Federal Bureau of Prisons (FBOP)

Subj:  TRANSFER OF "INCOMPETENT" MILITARY MEMBERS IN NEED OF
       MENTAL HEALTH TREATMENT FROM DOD TO FBOP, HEALTH SERVICES
       DIVISIONS

Ref:   (a) Interagency agreement between DoD and FBOP Health
       Services Division

Encl:  (1) Report of medical board summary
       (2) Medical treatment records
       (3) Confinement Order and NAVCONBRIG Miramar
           investigation
       (4) Commitment Order
       (5) Order for examination and Patient evaluations
           Lakeside BHS
       (6) Evaluation by Mark A. Kalish M.D., M.P.H.
       (7) Psychiatric evaluations NAVHOSP Great Lakes
       (8) Complete Naval Medical Record
       (9) Personal Data Sheet
      (10) Investigating Officers Report w/ enclosures

1.  Pursuant to reference (a) enclosures (1) through (12) are
submitted.

    a.  Complete medical diagnosis, related test results, and
information concerning ongoing medical treatment:  See
enclosures (1) and (2).  (Complete 706 board report is being
forwarded by Naval Medical Center, San Diego, California)

    b.  Correctional management file containing court-martial
and/or confinement orders, sentence computation records,
description of current offenses, sentencing order, projected
release date, description of prior criminal behavior, and
disciplinary history while in confinement:  See enclosures (3)
and (4).

    c.  Commitment order and any finding that the prisoner is
incompetent or found not guilty by reason of lack of mental
capacity:  See enclosure (5).

EXHIBIT ( | )

    d.  All available mental and health evaluations:  See enclosures (6) though (9).

    e.  All available medical and dental records:  See enclosure (10).  Dental record could not be located.

    f.  Synopsis of military service record:  See enclosure (11).

    g.  Personal Data:  See enclosure (11).

    h.  Home of record and unit address:  See enclosure (11).

    i.  Case manager (physician) and telephone number:  CAPT Gregory Foster, USAF.  (859) 577-7144.  Case manager for HMC Hill at Naval Consolidated Brig, Miramar, California.

    j.  Charging documents and arrest records:  See enclosure (12).

    (k) The names and work telephone numbers of the Staff Judge Advocate for the court-martial convening authority, prosecuting attorney (trial counsel) and defense counsel:  LCDR Shannon Kopplin, JAGC, USNR, (619) 556-1701, Trial Counsel, Trial Service Office West, San Diego, CA; LT Dave Norkin, JAGC, USNR, (619) 556-1869, Defense Counsel, Naval Legal Service Office (NLSO) Southwest; LT Mark Mellet, JAGC, USNR, NLSO Great Lakes, Defense Counsel, Chicago, IL, (847) 688-4753, ext 117.  LCDR Johnny Nilsen, JAGC, USN, (619) 532-1197, Assistant Staff Judge Advocate, Commander, Navy Region Southwest, San Diego, CA (Convening Authority).

   2.  POC for the OEGCMJ is LCDR Johnny Nilsen, JAGC, USN, at COMM: (619) 532-1197, DSN: 522-1197.

                           R.A. REYNOLDS
                           CAPT, JAGC, USN
                           Staff Judge Advocate

10/14/2002   00:23    5561712
Case 1:05-cv-06175    Document 28    Filed 05/03/2006    Page 38 of 37
OCT.11.2002  12:37PM

COMMANDER, NAVY REGION SOUTHWEST
GENERAL COURT-MARTIAL CONVENING AUTHORITY
IN CASE OF

UNITED STATES OF AMERICA   }
                           }
v.                         }    COMMITMENT TO CUSTODY OF
                           }    ATTORNEY GENERAL FOR THE
                           }    UNITED STATES OF AMERICA
KIRK L. HILL               }    FOR RESTORATION OF
HMC (SEAL), USN            }    COMPETENCY TO STAND TRIAL
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                }

## ORDER

On 30 July 2002 a 706 Medical board heard the matter of Hospital Corpsman Chief (Seal) Kirk Lee Hill, U.S. Navy, and made a determination with respect to his ability to stand trial. HMC Hill is charged with assault in which grievous bodily harm is intentionally inflicted/likely to produce death or grievous bodily harm, in violation of UCMJ, Article 128, two specifications.

The 706 board concluded that: (1) at the time of the criminal conduct in question, the accused had a severe mental disease; (2) at the time of the criminal conduct, he was unable to appreciate the wrongfulness of his acts; and (3) the accused is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly or intelligently in his defense.

Therefore, pursuant to 10 U.S.C. §876b (a)(2), and, in turn, in accordance with 18 U. S. C. §4241(d), it is hereby directed that the accused be committed to the custody of the United States Attorney General, and that he be transported to a suitable facility for hospitalization and treatment for a period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the accused will attain the capacity to permit the trial to proceed.

If the director of the treatment facility determines the accused has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him, and to assist properly in his defense, he shall promptly transmit a notification of that determination to the Attorney General and to Commander, Navy Region Southwest, San Diego, California, the Officer Exercising General Court-Martial Convening Authority in this matter, with a copy to the Accused's Detailed Defense Counsel, in accordance with 10 U.S.C. §876b (a)(4)(A).

10/14/2002  20:23  5551712
OCT. 11.2002  12:37PM

Arrangements shall be made for transport of the accused to and from a suitable facility for treatment, with such facility to be determined by the Federal Bureau of Prisons.

To facilitate communications related to the commitment and future return of the Accused, the following points of contact are provided:

General Court-Martial Convening Authority
Commander, Navy Region Southwest, San Diego, CA
Staff Judge Advocate's Office (N05)
937 No. Harbor Drive
San Diego, CA  92132-0058
Tel:  (619) 532-1418
Fax:  (619) 532-1426

*Counsel for the Accused*:
LT Dave Norkin, JAGC, USNR
Naval Legal Service Office Southwest
3395 Sturtevant St, Suite 2
San Diego, CA 92136-5138
Tel:  (619) 556-1669
Fax:  (619) 556-5527

IT IS SO ORDERED.

Dated:  06 SEP '02

By:  _J. L. Betancourt_
     J. L. BETANCOURT
     Rear Admiral, U.S. Navy
     Commander, Navy Region Southwest
     General Court-Martial Convening Authority

N0289V
//23B/PF//

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

REPORT OF INVESTIGATION (CLOSED)                    01APR03

ASSAULT (II)                    CONTROL:  05MAR02-GCGL-0081-7GNA/C

S/HILL, KIRK LEE/HMC USN
M/W/MEE7/U/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/24APR65/OREGON, IL
V/FOSTER, JAMES HALL/CIV
M/B/USXX/U/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/08APR52/CLEVELAND, OH

COMMAND/NAVAL HOSPITAL GREAT LAKES, IL/00211

MADE AT/GCGL/GREAT LAKES, IL/JAMES E. MCCARTNEY, SPECIAL AGENT

REFERENCE
(A)  NCISRA Great Lakes ISR/11FEB03

CASE SUMMARY
1.  Investigation initiated when Great Lakes (IL) Police Department
(GLPD) reported S/HILL assaulted V/FOSTER on 05MAR02.  Initial
information received indicated S/HILL struck V/FOSTER on the right
side of his head with an eight pound metal bar while the two were
in the men's locker room of the Naval Hospital Corp School
Gymnasium, Bldg 80-H, Great Lakes, IL.  V/FOSTER was knocked
unconscious from the blow and an ambulance was summoned.  V/FOSTER
was transported to Naval Hospital Great Lakes and subsequently
transferred to the intensive care unit of Evanston Hospital
Evanston, IL.  S/HILL fled the scene and was eventually
apprehended.  On 02JUL02 S/HILL was taken to an article 32 hearing
in San Diego, CA.  On 21AUG02, Lt. Andrea Lockhart, Trial Counsel,
Trial Service Office West, was contacted and she advised the 706(a)
competency hearing determined S/HILL is unable to appreciate the
nature of the Courts Martial judicial proceedings and participate
in his own defense.  On 10FEB03 reporting agent was contacted by
Lt. Andrea Lockhart Piconi, Trial Counsel, TSO West Detachment San
Diego, CA who advised S/HILL was evaluated by Psychiatrists for the
Federal Bureau of Prisons where S/HILL is currently incarcerated in
Rochester, MN.

DETAILS
2.  On 01APR03, reporting agent contacted LCDR Johnny Nilsen, JAGC,
USN, Commander Navy Region South West 937 North Harbor Drive San
Diego, CA  92137 (619) 532-1197.  LCDR Nilsen advised that a
Federal Bureau of Prisons (BOP) board of Psychiatrists has
evaluated S/HILL and determined he was insane when the crime
against V/FOSTER was committed on 05MAR02.  LCDR Nilsen advised
that based on the BOP psychiatric boards findings the convening
authority has found S/HILL guilty by reason of insanity and has
dropped all criminal charges against S/HILL, exhibit (1) pertains.
LCDR Nilsen stated that S/HILL will be taken to a medical
separations board and discharged from U.S. Naval service.

3.  S/HILL'S photographs are attached as exhibit (2) and are being
forwarded to NCISHQ.  S/HILL'S fingerprint cards are attached as

FOR OFFICIAL USE ONLY
PAGE   1

C-74  C-74

WARNING
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONL    RSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO.  CONTENTS MAY NOT BE DI     ED TO THE PARTY(S) WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

5MAR02-GCGL Case 1:05-cv-06175   Document 28   Filed 05/03/2006   Page 36 of 37

S/HILL, KIRK LEE/HMC USN

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

exhibit (3) and are being forwarded to NCISFO Pensacola, FL for submission to NCIC.

4.  This investigation was conducted under suspected violation of article 128 of the UCMJ, Assault.

EXHIBITS
(1)  Dismissal of charges from Commander Navy Region
     Southwest/05FEB03...(Copy all, less GCPF)
(2)  S/HILL'S photographs/undated...(Orig 0023B only)
(3)  S/HILL'S fingerprint cards/05MAR02...(Orig GCPF only)

DISTRIBUTION
NCISHQ:  0023B (M)
NCISFO:  GCPF (M)
INFO:    Commanding Officer Naval Hospital Great Lakes, IL (M)/TSO
         West 3395 Sturtevant Street, Suite 9 San Diego, CA 92136,
         ATTN: LT. Andrea Lockhart Piconi (M)/Commander Navy Region
         South West 937 North Harbor Drive San Diego, CA  92137
         ATTN: LCDR Johnny Nilsen.

WARNING
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

0126

```
UNITED STATES              )     DISMISSAL OF CHARGES
                           )
        V.                 )
                           )
KIRK L. HILL               )
HMC(SEAL), USN             )
```

<u>ORDER</u>

    All charges previously preferred under the Uniform Code of Military Justice against HMC Kirk L. Hill, USN, 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, are hereby dismissed solely for reasons related to his mental condition.


                J. L. BETANCOURT
                Rear Admiral, United States Navy
                Commander, Navy Region Southwest


                Date: _J. Betancourt_       5 Feb 03


CERTIFIED TO BE A TRUE COPY

K. L. MILLER
LN1 USN

EXHIBIT ( I )

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HALL FOSTER,<br><br>      Plaintiff,<br><br>      v.<br><br>KIRK L. HILL,<br><br>      Defendant-Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Judge Der-Yeghiayan<br>)<br>)    No. 05 C 6175<br>)<br>)    (formerly No. 04 L 180 in the Circuit<br>)    Court of Lake County, Illinois |

## DECLARATION OF DAVID BAY

I, David Bay, hereby declare as follows:

I have been employed by the Navy for 18 years and my current position is Supervisory Special Agent in Charge of the Naval Criminal Investigative Service (NCIS), Great Lakes Resident Agency, Great Lakes, Illinois. As a result of my past and present duties with the Navy, I am familiar with the policies and procedures that apply to NCIS investigations and reports, including but not limited to the policies and procedures that govern the creation and maintenance of NCIS reports. I am also familiar with the NCIS investigation regarding an alleged assault by Kirk Hill on James Foster.

I have reviewed the NCIS reports produced by the United States in this action and bates-labeled US 0003 to US 0127. These reports were created by the NCIS at or near the time of the occurrence of the matters set forth, and were made by, or from information transmitted by, a person with knowledge. These reports were also made as an ordinary part of a regularly conducted activity by the NCIS, and kept in the course of this regularly conducted activity. With respect to the matters observed by the NCIS in these reports, a duty was imposed by law to make these observations and to report them. In addition, the factual findings contained in these reports resulted from an investigation made pursuant to an authority granted by law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _28 APR 06_

David Bay, Supervisory Special Agent in Charge

UNITED STATES
EXHIBIT

5